IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA,                                                    RESPONDENT

V.                               NO.  5:06-cv-5138-JLH
                                      5:05-cr-50005-JLH

JOSE DIMAS AGUILAR-MEJIA                                                      PETITIONER


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is the Motion to Vacate, Set Aside or Correct Sentence (Doc. 1) filed by

the Petitioner under 28 U.S.C. Section 2255.  The Government Responded by filing a Motion for

Summary Judgment (Doc. 41), an affidavit of Rafael Marquez (Doc. 1, Attachment1) and an

affidavit of James Pierce. (Doc. 1, Attachment 2)  The Government also filed a Supplement to

the Motion for Summary Judgment.  (Doc. 43)  The court then sent a Questionnaire to the

Petitioner which was returned to the court on October 23, 2006. (Doc. 40)

**Procedural History**

On January 14, 2005, the petitioner, Jose Dimas Aguilar-Mejia (hereinafter

"Aguilar-Mejia") was named in a one-count Indictment filed in the United States District Court

for the Western District of Arkansas. (Docket Entry #7) The Indictment charged Aguilar-Mejia

with illegal re-entry into the United States after deportation subsequent to an aggravated felony

conviction in violation of 8 U.S.C. §§ 1326(a) and (b). Specifically, the Indictment set forth that

on December 28, 2004, Aguilar-Mejia was knowingly and unlawfully present in the United

States in the Western District of Arkansas after having been previously deported subsequent to

his conviction for Possession of a Controlled Substance with Intent to Deliver

(Methamphetamine), Docket # 97-523, in the Circuit Court of Washington County, Arkansas, an aggravated felony, without having obtained the consent of the Secretary of Homeland Security for re-admission into the United States, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), 6 U.S.C. §§ 202(3)and (4) and 6 U.S.C. § 557. (Docket Entry #31: Pre-Sentence Report, hereinafter "PSR", ¶ 1) Aguilar-Mejia initially pled not guilty to the charge but on February 28, 2005, Aguilar-Mejia appeared with appointed counsel (federal public defender James Pierce) before the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, for a change of plea hearing. (PSR ¶ 4) At the Change of Plea Hearing, a written Plea Agreement was presented wherein Aguilar-Mejia agreed to plead guilty to the charge in exchange for the government's agreement not to object to a reduction for acceptance of responsibility. (PSR ¶ 4; *see also* Docket Entry #28: Plea Agreement) The District Court accepted the Plea Agreement and ordered a Pre-Sentence Report.

On May 25, 2005, the Probation Office issued Aguilar-Mejia's PSR. (Docket Entry #31) In the PSR, the Probation Office assigned 3 criminal history points pursuant to 4A1.1(a) as a result of Aguilar-Mejia's conviction in Washington County, AR Circuit Court for Possession of methamphetamine with intent to deliver , #CR-97-523 (PSR ¶ 30) The Probation Office assigned an additional 3 points pursuant to U.S.S.G. § 4A1.1(a) as a result of Aguilar-Mejia's conviction in Washington County, AR Circuit Court for failure to appear for his trial in case #CR-97-523. (PSR ¶ 31) The PSR reflects that Aguilar-Mejia was arrested for the possession with intent to distribute methamphetamine offense on March 10, 1997 and that he was arrested for the failure to appear offense on August 20, 1999 after failing to show up for the trial that was set for June 30, 1997. (PSR ¶¶ 30-31) The PSR also reflects that Aguilar-Mejia was sentenced for these two offenses on the same day, January 25, 2000, and that he received a

total sentence of 10 years imprisonment with 7 years suspended. (PSR ¶¶ 30-31) The PSR

indicates that Aguilar-Mejia was paroled on July 31, 2000, was deported on September 9, 2000,

and that his parole supervision discharged on August 21, 2002. (PSR ¶¶ 30-31) The Probation

Office further assigned an additional 2 criminal history points pursuant to U.S.S.G. § 4A1.1(d)

due to the fact that Aguilar-Mejia was on a suspended sentence at the time of commission of the

instant illegal re-entry offense. (PSR ¶ 33) Accordingly, a total of 8 criminal history points

were assigned, placing Aguilar-Mejia in criminal history category IV. (PSR ¶ 34) With a total

offense level of 21, the guideline range of imprisonment was set at 57 to 71 months. (PSR ¶ 50)

Aguilar-Mejia did not file any objections to the Pre-Sentence Report. (*See* Addendum to the Pre-

Sentence Report dated July 15, 2005) On July 22, 2005, Aguilar-Mejia appeared for sentencing.

(Docket Entry #30) The district court adopted the guideline range established by the Probation

Office and sentenced Aguilar-Mejia to 57 months imprisonment, three years supervised release,

$7500 fine, and a $100 special assessment. (*See* Docket Entry #32, 33: Judgment) The

Judgment was returned executed on December 15, 2005 and Aguilar-Mejia did not appeal his

conviction or sentence. On July 27, 2006, Aguilar-Mejia filed the instant Motion to Vacate, Set

Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Docket Entry #36).

     The Petitioner has filed this Motion to Vacate Sentence (Doc. 35) pursuant to 28 U.S.C.

Section 2255 on January 17, 2007 and has alleged two grounds.  First he contends that the

District Court improperly calculated Petitioner's criminal history points under the sentencing

guidelines, and, second, he contends his counsel was ineffective because he refused to file an

appeal.

### Discussion:

Criminal History Points

Petitioner contends that the court improperly calculated his criminal history points because the "court divided petitioner's prior conviction into two different crimes, where as a single sentence was imposed upon the petitioner in the State court for the underlying prior offense of failure to appear in a possession with intent to deliver metamphetamine [sic]." (Doc.36, p. 3) The Petitioner was charged with possession with intent to deliver methamphetamine and was arrested on that charge on March 10, 1997. (CR 97-523) (PSR, para. 31)  The Petitioner failed to appear for the trial on the possession with intent to deliver methamphetamine on June 30, 1997.  As a result of his failure to appear at trial a new charge was filed and a warrant issued.  Failure to appear is a Class C felony if the required appearance was to answer a charge of a felony or for disposition of any felony charge either before or after a determination of guilt of the felony charge. (A.C.A 5-54-120) The Petitioner was arrested on the Failure to Appear charge on August 20, 1999. (CR 97-969)  The Petitioner was sentenced on both of these charges to 10 years imprisonment with 7 years suspended.  This is not one sentence but two separate and distinct sentences which are running concurrent with each other. (PSR, para. 30-31)

On July 22, 2005, Aguilar-Mejia appeared for sentencing.(Doc. 30) The district court adopted the guideline range established by the Probation Office and sentenced Aguilar-Mejia to 57 months imprisonment, three years supervised release, $7500 fine, and a $100 special assessment. (See Docket Entry #32, 33: Judgment) The Judgment was returned executed on December 15, 2005 and Aguilar-Mejia did not appeal his conviction or sentence. On July 27, 2006, Aguilar-Mejia filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 36). Under U.S.S.G. § 4A1.2(a)(2), "prior sentences imposed in unrelated cases are to be counted separately." The commentary to that guideline specifically

provides that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, comment. (n.3). In United States v. McKay, 431 F.3d 1085, 1094 (8th Cir. 2005), the defendant argued "that the court should have grouped a number of his offenses together because they were consolidated for sentencing. He pled guilty to a number of traffic-related infractions and marijuana possession offenses for which he received concurrent sixty-day sentences." The Eighth Circuit held that, pursuant to U.S.S.G. § 4A1.2, comment. (n. 3), "[a]lthough McKoy's cases were consolidated for sentencing, they were all separated by intervening arrests on different dates. Thus, the district court properly scored each as a separate offense under the guidelines." U.S. v. McKay, 431 F.3d 1085, C.A.8 (Neb.),2005.

In the instant case, Aguilar-Mejia was arrested for possession with intent to distribute methamphetamine on March 10, 1997. A trial date was set which he missed and he was subsequently arrested over two years later on August 20, 1999, and charged with failure to appear. Even if the two charges were consolidated for sentencing resulting in pronouncement of one ten year sentence for both offenses, the two prior convictions/sentences are nevertheless not considered related under the guideline because they were for offenses which were clearly separated by an intervening arrest. Accordingly, the Probation Office correctly assessed three criminal history points for each of the two prior offenses and the district court did not err in its

criminal history computation.

**Ineffective Assistance of Counsel**

Aguilar-Mejia also argues that he received ineffective assistance of counsel. Specifically, he argues that counsel was deficient for failing to honor Aguilar-Mejia's request to file an appeal challenging the criminal history score, and that "counsel's inadequated [sic] investigation and knowledge of the U.S.S.G., in conjunction with the facts on the record, particularly petitioner's prior offense, deprived petitioner his right to effective representation by counsel. Simply stated, counsel's failure to present to the court with facts as it pertains to the prior offense, and its applicability to the criminal history calculation, prejudiced petitioner." (Doc.36, Petitioner's Memorandum in Support of 2255 Motion at p.5)

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). To sustain his ineffective assistance of counsel claims, he must show that "his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." Id. (citing Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If the defendant cannot prove prejudice, a court need not inquire as to whether counsel's performance was deficient. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir.1996).

When considering whether the defendant suffered prejudice, a court must determine whether "there is a reasonable probability [sufficient to undermine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052; Wise v. Borzois, 136 F.3d 1197, 1206

(8th Cir.1998). Courts also consider "whether the result of the proceeding was fundamentally

unfair or unreliable." Lecherwite v. Farewell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 LED.2d 180

(1993)

An attorney is under no obligation to undertake an unpromising investigation. Harvey v.

United States, 850 F.2d 388, 403 (8th Cir. 1988). Additionally, counsel is not ineffective for

failing to file a motion that would not have succeeded because the petitioner was not actually

prejudiced. Harris v. House wright, 697 F. 2d 202 (8th Cir. 1982); United States v. Johnson, 707

F.2d 317, 320 (8th Cir. 1983)(In determining whether there was prejudice to appellant from the

asserted lack of diligence, the underlying issue of whether the motion, if made, would have been

successful must be considered).

Aguilar-Mejia's ineffective assistance of counsel claim is based almost exclusively on his

contention that the district court improperly computed his criminal history score by assessing

three criminal history points for each of his two prior convictions, i.e. his possession with intent

to distribute conviction and his failure to appear conviction. As discussed previously, however,

that argument is without merit because the district court did not err in assessing three criminal

history points for each of the two convictions which were properly considered to be not related

under the guidelines. Accordingly, any challenge to the criminal history calculation by defense

counsel, either during the sentencing phase or on direct appeal, would have been entirely without

merit and defense counsel was not ineffective for failing to file such a motion or appeal. Further,

to the extent that Aguilar-Mejia alludes to having received ineffective assistance of counsel in

other areas, such as failure to adequately investigate the case, the United States submits that even

if Aguilar-Mejia could demonstrate that he received unconstitutionally ineffective assistance in

some area (which he has not done), he has not shown and cannot show that any such performance

caused him actual prejudice. See i.e. Harvey v. United States, 850 F.2d 388, 403 (8th Cir.

1988)(An attorney is under no obligation to undertake an unpromising investigation.)

Consequently, the United States submits that there was no ineffective assistance of counsel in

violation of Strickland present in this case.

## Failure to File Appeal

If an attorney has consulted with his client about an appeal, he will not be found

ineffective unless he fails to follow "express instructions with respect to an appeal." Roe v.

Flores-Ortega, 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). An attorney's

failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective

assistance entitling petitioner to § 2255 relief. Barger v. United States, 204 F.3d 1180, 1181 (8th

Cir. 2000) For such a claim to succeed, however, the client must show that he instructed his

counsel to file an appeal. Id. A bare assertion by the petitioner that he made such a request is

not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more

credible indicates the contrary proposition. Id. Moreover, "ineffective assistance of counsel

cannot be presumed from the failure to advise that an appeal be taken ..." United States v. Neff,

525 F.2d 361, 364 (8th Cir. 1975). Where the record indicates that defense counsel did consult

with the client about the right to file an appeal, and there is an absence of any evidence in the

record to counter defense counsel's testimony that he never received express instructions from

the client about an appeal, the client cannot make out an ineffective assistance claim, and cannot

show that the district court is required to hold an evidentiary hearing. United States v. Arvizu,

270 F.3d 605, 606 (8th Cir. 2001)

The Court put forth the following question to the Petitioner; "What did you say to Pierce

when you directed him to file an appeal?" The Petitioner responded "What if he going to file an

appeal on my behalf." The petitioner then states that Mr Pierce told him he was "not going to

appeal because there was no merit." The Petitioner contends this conversation took place in the

"bullpen" outside of court. (Doc. 40 at page 2) This conversation allegedly took place on July 22,

2005.

The court does not believe that the words spoken by the petitioner to Mr. Pierce

constituted an express instruction to appeal ( Roe v.Flores-Ortega, Id) but merely constituted an

inquiry into whether an appeal would be appropriate or beneficial.

On August 4, 2005, Aguilar-Mejia contacted Rafael Marquez, an interpreter with the

Federal Public Defender's Office, and requested an appeal of the fine imposed. Rafael Marquez

informed James Pierce of this request via e-mail, and James Pierce responded setting forth

possible problems with an appeal of the fine only. Rafael Marquez then spoke with Aguilar-

Mejia about Pierce's concerns, and Aguilar-Mejia informed Marquez that he did not want to

pursue an appeal. (Doc. 41, Attachment #1 and Attachment #2)

It is clear that on August 4, 2005, even if the Petitioner had previously expressed a desire

to appeal, he spoke with his attorney, through the interpreter and gave specific instructions that

he did not want to pursue any appeal. (Doc. 41, Attachment 1, page 3) A defendant who

explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following

his instructions, his counsel performed deficiently. *Jones v. Barnes,* 463 U.S. 745, 751, 103

S.Ct. 3308, 77 L.Ed.2d 987 (1983)

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C.

Section 2255, be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which**

**to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely**

**written objections may result in waiver of the right to appeal questions of fact.  The parties**

**are reminded that objections must be both timely and specific to trigger de novo review by**

**the district court.**

Dated this 13 day of April 2007

/s/ J. Marschewski
_____
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE